IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

OMAR F. JIMENEZ, M.D.,

         Plaintiff,

   v.

WELLSTAR HEALTH SYSTEM, et
al.,

        Defendants.

CIVIL ACTION FILE NO.

1:08-CV-0049-WSD-JFK

## <u>NON-FINAL REPORT & RECOMMENDATION</u>

     Defendant hospitals and physicians in this civil rights case have filed a motion

[Doc. 11] to dismiss Plaintiff Dr. Omar F. Jimenez's amended complaint [Doc. 19]

pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon

which relief can be granted. Dr. Jimenez has filed a response in opposition, and

Defendants have filed a brief in support of the motion to dismiss. [Docs. 22 and 23].[1]

---

[1]Plaintiff's initial response to Defendants' motion to dismiss discussed, almost exclusively, why an "amended complaint" attached to his response should not be dismissed. [Doc. 16]. Defendants, treating the amended complaint as if it were properly filed, replied addressing why the amended complaint should be dismissed. [Doc. 17]. After taking the motion under advisement, the court ordered Plaintiff to properly file an amended complaint with the Clerk of Court and ordered the parties to submit supplemental briefs referring to only the amended complaint and to present all of their arguments in their supplemental briefs as no reply or sur-reply briefs would be accepted by the court. [Doc. 18]. The supplemental briefs [Docs. 22 and 23] are, accordingly, the only briefs considered by the court.

For the reasons set forth below, the court recommends that Defendants' motion be denied in part and granted in part.

## I.    Background History

Dr. Jimenez contends that Defendants, individually and knowingly acting as part of a conspiracy, discriminated against him because of his race (African-American) in connection with the suspension of his medical staff privileges at Defendant WellStar Kennestone Hospital ("WellStar-Kennestone"), which then resulted in his loss staff privileges at two other Defendant WellStar Hospitals (Cobb and Windy Hill) and his ineligibility to sit for the November 2006 oral exams for board certification in neurosurgery.  Dr. Jimenez is licensed to practice medicine in the State of Georgia, with a specialty in neurosurgery but was not board-certified during the time period at issue.[2]  [Doc. 19, ¶ 3].  Assuming the complaint's factual allegations are true and construing them in the light most favorable to the Plaintiff, the court summarizes the facts relevant to Defendants' motion to dismiss, as follows.

Plaintiff Jimenez was employed by Dr. Daniel Moore, M.D., the Chairman of Neurosurgery at WellStar-Kennestone, as an associate in Dr. Moore's neurosurgery

---

[2]The court has not been provided with any statement or evidence indicating Dr. Jimenez's current board certification status.

practice between August 2000 and July 2002. [Doc. 19, ¶¶ 9, 12]. At the end of that period, Plaintiff elected not to join Dr. Moore's practice as a partner. [Doc. 19, ¶ 13]. Dr. Jimenez formed a medical practice in the Wellstar-Cobb area, outside of the area covered by a non-compete covenant in his employment agreement with Dr. Moore, but he continued to have staff privileges and be on-call at WellStar-Kennestone. [Doc. 19, ¶¶ 14, 15]. After Plaintiff left Dr. Moore's practice, Dr. Moore filed a law suit seeking to prohibit Plaintiff from practicing at WellStar-Kennestone; that suit was dismissed. [Doc. 19, ¶¶ 15, 16]. On August 18, 2003, Dr. Moore entered the operating room at WellStar-Kennestone while Dr. Jimenez was performing surgery and remained there, reviewing the chart and films, even after being asked to leave. [Doc. 19, ¶ 17]. This was a violation of Operating Room protocols which would ordinarily have resulted in disciplinary action but, when Dr. Jimenez reported Dr. Moore's actions - "a charge being brought against a Caucasian physician by an African-American physician" - WellStar-Kennestone took no action. [Doc. 19, ¶¶ 18-20, 73-74]. Plaintiff then wrote to the Inspector General, Office of Civil Rights of the U.S. Department of Health and Human Services, and Dr. Moore commenced a defamation suit. Dr. Moore's defamation suit has been dismissed. [Doc. 19, ¶ 22]. Plaintiff's complaint to the

3

Inspector General resulted in a hearing before the Composite Board of Medical Examiners but did not result in sanctions against Dr. Moore. [Doc. 19, ¶ 21].

Dr. Jimenez then heard that a rumor was being circulated that he was going to be "kicked out of the hospital" because he "had failed [his] boards[,]" although he had not received any formal notification to that effect. [Doc. 19, ¶ 75]. After learning that Dr. Moore had circulated the rumor, Plaintiff sent a letter of protest to WellStar administrators. [Doc. 19, ¶¶ 26, 75]. In a series of actions, (1) WellStar notified Dr. Jimenez by letter dated October 28, 2005, that he was reappointed to Active Staff for the period of October 6, 2005, to November 30, 2005; (2) the Director of Medical Services of WellStar Health System ("WHS") informed the American Board of Neurological Surgery by letter dated November 17, 2005, that Plaintiff had full staff privileges and that there was no derogatory information in his file; and (3) then, in a letter dated December 8, 2005, WellStar-Kennestone extended Plaintiff's staff privileges on the condition that he complete certification by the Neurosurgery Board by June 30, 2006, albeit Plaintiff was scheduled to take his board certification oral exams in November 2006. [Doc. 19, ¶¶ 23-25, 27, 75, 80]. The following month, on January 13, 2006, at 8:00 p.m., Plaintiff received a call from Dr. Kelley informing Plaintiff that his clinical privileges at WellStar-Kennestone were being summarily suspended based

4

upon allegations including not timely rounding, not responding promptly to Emergency Room calls, not signing his physician's assistants' notes, and performing inappropriate operations. [Doc. 19, ¶¶ 28, 29, 65]. Plaintiff was told not to communicate with or treat his patients at WellStar-Kennestone, including one patient on his way that night to the Emergency Room who needed surgery, and other patients at the hospital, including one with a broken neck and a Halo. [Doc. 19, ¶¶ 65, 66.]

Plaintiff's complaint sets forth extensive factual allegations in support of his contentions that the suspension of his privileges was spearheaded by Dr. Moore acting with a racial animus, that the allegations made against him were false, and that he was treated less favorably than other non-black physicians at WellStar hospitals following their commission of infractions more serious or as serious as those with which Plaintiff was charged. [Doc. 19, ¶¶ 35-53, 56-58]. Dr. Jimenez was unable to obtain coverage from the other neurosurgeons, none of whom are African-American, and WellStar-Kennestone would not let two African-American neurosurgeons have privileges and cover for Plaintiff allegedly because their office was too far away, although their office was within the twenty-five miles required by WellStar-Kennestone. [Doc. 19, ¶¶ 28-33].

5

Plaintiff immediately requested a hearing on the suspension of his privileges in January 2006, but his charts were not sent to an independent medical review company for four months. [Doc. 19, ¶¶ 34, 86]. The medical review company ultimately determined that Dr. Jimenez's patient care was in accord with neurological standards and was adequate, although it criticized him for late-signing of physicians' assistant notes, late charting and illegible handwriting. [Doc. 19, ¶ 34]. In June 2006 (while Plaintiff's staff privileges remained suspended), he filed a complaint with the EEOC alleging that the suspension of his privileges was based upon his race, national origin ("non-white"), and in retaliation for his opposition to discrimination. [Doc. 19, ¶ 77].

WellStar-Kennestone did not commence a hearing as requested by Plaintiff until August of 2006, and the hearing was then continued in subsequent months. [Doc. 19, ¶¶ 79, 80]. Plaintiff ultimately withdrew his hearing request in December 2006, as a hearing at that point would have served no purpose. Dr. Jimenez's loss of privileges at WellStar-Kennestone had resulted in his loss of privileges at all WHS Defendant hospitals. [Doc. 19, ¶¶ 59, 67-69]. And, because hospital staff privileges are a pre-requisite for board certification, Dr. Jimenez was no longer eligible to take his oral exams for board certification, which were scheduled for November 2006. [Doc. 19, ¶¶ 78, 80]. By continuing his suspension and delaying his hearing, which Plaintiff

6

believed was in retaliation for his complaints about discrimination, WellStar-Kennestone had prevented him from taking his board certification exams in November 2006; thus, there was no possibility of his privileges being reinstated at the Defendant WellStar hospitals, which was the relief he was seeking. [Doc. 19, ¶¶ 80-83].

In his amended complaint, Plaintiff contends that Defendants interfered with his contractual relationships with the hospitals, his patients and their insurers[3] in violation of § 1981. [Doc. 19, ¶¶ 12-70]. In his second cause of action, Plaintiff contends that after he filed a complaint with the EEOC in June 2006, Defendants retaliated against him in violation of § 1981, by delaying inordinately a hearing on the suspension of his staff privileges. [Doc. 19, ¶¶ 71-83]. In his third cause of action, Plaintiff alleges that Defendants knowingly acted as part of a conspiracy based upon a racial animus in violation of 42 U.S.C. § 1985(3), aimed at depriving Plaintiff of his right to contract with his patients, the hospital(s), and patients' insurers, thus depriving him of his right to be secure in his property interest in his profession on the same terms and conditions as those available to white persons. [Doc. 19, ¶¶ 84-118]. In his fourth cause of action,

---

[3]Plaintiff also contends that Defendants interfered with his property interest in the practice of his profession as a neurosurgeon. The court finds it unnecessary to address this issue separately at this early stage in the proceedings. The court also finds it unnecessary to address at this time Defendants' argument regarding Plaintiff's allegation of interference with his contracts with patients and insurers but notes that Plaintiff has alleged interference with existing, not merely prospective patients.

7

Plaintiff alleges that Defendants intentionally and maliciously interfered with Plaintiff's enjoyment of his property interest in the practice of his profession, in violation of Ga. Stat. 51-10-1. [Doc. 19, ¶¶ 119, 120]. In his fifth and sixth causes of action, Plaintiff alleges that WellStar-Kennestone Hospital (1) breached its express and implied contractual obligations of good faith and fair dealing when it suspended Plaintiff's staff privileges without a hearing within a reasonable period of time, in violation of Ga. Stat. 51-1-8 [Doc. 19, ¶¶ 121, 122], and (2) failed to act in accord with its bylaws and "to refrain from engaging in racially discriminatory and otherwise vindictive conduct toward Plaintiff" in violation of its statutory obligations, thus causing special damages for which Plaintiff has a cause of action under Ga. Stats. 51-1-6 and 7 [Doc. 19, ¶¶ 123, 124].

Defendants contend that Plaintiff's discrimination and retaliation claims based on 42 U.S.C. § 1981 fail as a matter of law because the grant of hospital staff privileges pursuant to medical staff bylaws does not create *per se* a contractual relation between a physician and hospital; therefore, Plaintiff cannot establish interference with any contractual rights protected by § 1981. [Doc. 22 at 13-22]. Defendants argue that Plaintiff's § 1981 retaliation claim likewise fails because Plaintiff has not alleged that he engaged in conduct protected under § 1981 and that he has not shown a causal

8

connection between any protected expression and the acts of which he complains or that he suffered an adverse employment action. [Doc. 22 at 23-28]. Defendants contend that Plaintiff's conspiracy claim based on 42 U.S.C. § 1985(3) also fails because the underlying § 1981 claims fail and because he has not alleged the necessary elements of a conspiracy. [Doc. 22 at 28-30]. Defendants' final arguments are that Plaintiff's state law claims of interference with a property interest (Ga. Stat. 51-10-1), breach of contract (Ga. Stat. 51-10-8) and breach of the statutory obligations to refrain from engaging in racially discriminatory and otherwise vindictive conduct (Ga. Stats. 51-10-6 and 7) fail because Plaintiff has no property or contract interest in his medical staff privileges and because he failed to exhaust the administrative appeal remedies provided by the hospital bylaws. [Doc. 22 at 30-34].

## II.    Standard of Review on a 12(b)(6) Motion to Dismiss

On a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the complaint's factual allegations are assumed true and construed in the light most favorable to the plaintiff.[4] Hardy v. Regions Mortgage, Inc., 449 F.3d 1357, 1359 (11th Cir. 2006); M.T.V. v. DeKalb County Sch. Dist., 446 F.3d 1153, 1156 (11th Cir. 2006). The Federal Rules

---

[4]However, "[c]onclusory allegations and unwarranted deductions of fact are not admitted as true." Associated Builders, Inc. v. Alabama Power Co., 505 F.2d 97, 100 (5th Cir. 1974).

of Civil Procedure include no requirement that a plaintiff detail the facts upon which the plaintiff bases a claim. The rules of notice pleading require only that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . ." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, _, 127 S. Ct. 1955, 1964-65, 167 L. Ed. 2d 929 (2007) (citation omitted)[5]; see also Financial Security Assurance, Inc. v. Stephens, Inc., 500 F.3d 1276, 1282-83 (11th Cir. 2007) (recognizing that while notice pleading does not require specific facts to be pled for every element of a claim or that claims be pled with precision, "it is still necessary that a complaint 'contain either direct or inferential allegations respecting all the material elements

---

[5]The Eleventh Circuit Court of Appeals has held that the Supreme Court's decision in Twombly "abrogated its oft-quoted observation that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Weissman v. National Assoc. of Securities Dealers, Inc., 500 F.3d 1293, 1302-03 (11th Cir. 2007) (citations and internal quotations omitted). "The Supreme Court rejected the notion that a 'wholly conclusory statement of claim [can] survive a motion to dismiss whenever the pleadings le[ave] open the possibility that a plaintiff might later establish some set of [undisclosed] facts to support recovery.'" Id. (citations and internal quotations omitted).

AO 72A
(Rev.8/82)

necessary to sustain a recovery under some viable legal theory'") (citations omitted).

"Factual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all of the allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. at _, 127 S. Ct. at 1965. "Stated differently, the factual allegations in a complaint must 'possess enough heft' to set forth 'a plausible entitlement to relief[.]'" Stephens, 500 F.3d at 1282 (quoting Twombly, 550 U.S. at _, 127 S. Ct. at 1966-67). The court's inquiry at this stage of the proceedings focuses, therefore, on whether the challenged pleadings "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Erickson v. Pardus, _ U.S. _, _, 127 S. Ct. 2197, 2200, 167 L. Ed. 2d 1081 (2007) (citation omitted).

In reviewing a motion to dismiss, the court must keep in mind that a "motion to dismiss for failure to state a claim upon which relief can be granted merely tests the sufficiency of the complaint; it does not decide the merits of the case." Wein v. American Huts, Inc., 313 F. Supp. 2d 1356, 1359 (S.D. Fla. 2004) (citing Milburn v. United States, 734 F.2d 762, 765 (11th Cir. 1984)). Regardless of the alleged facts, however, it is well-settled that "'[d]ismissal of a complaint is appropriate 'when on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action.'" Jones v. United Parcel Service, Inc., 2008 U.S. Dist. LEXIS

11

7085, at *4 (N.D. Ga. Jan. 31, 2008) (quoting <u>Marshall County Bd. of Educ. v. Marshall County Gas Dist.</u>, 992 F.2d 1171, 1174 (11th Cir. 1993)).

The court will apply these standards in ruling on Defendants' motion to dismiss filed pursuant to Fed. R. Civ. P. 12(b)(6).

## III.    Discussion

### A.    Consideration of Documents Outside the Pleadings

As a preliminary matter, the court must address whether it can take into consideration the exhibits attached to Defendants' supplemental brief.   Defendants contend the exhibits [Doc. 22, Exs. A - H][6] can be considered by the court without converting Defendants' motion to a motion for summary judgment because they were "referenced by and [thus] incorporated into Plaintiff's Amended Complaint [and,

---

[6]The exhibits at issue include: Ex. A - Letter dated October 28, 2005, from WHS to Dr. Jimenez extending his staff privileges based on board certification by July 2006; Ex. B - Letter from WHS dated January 23, 2006, to Dr. Jimenez stating the grounds for summarily suspending his staff privileges at WellStar-Kennestone, without the supporting documents described as attachments to the letter; Ex. C - Letter dated February 15, 2006, from Plaintiff's counsel requesting a hearing regarding suspension of Dr. Jimenez's staff privileges; Ex. D - Letter dated December 11, 2006, from Dr. Jimenez to WHS, electing not to continue pursuing the hearing; Ex. E - WellStar-Kennestone Medical Staff Bylaws; Ex. F - WellStar Medical Staff Fair Hearing Policy; Ex. G - Wellstar Medical Staff Appointment Policy; and Ex. H - Letter from Dr. Jimenez to Defendants, postmarked September 23, 2005, protesting rumors that his privileges would be suspended because of delay in taking, or failure upon taking, the oral exams for neurosurgery board certification.

12

therefore,] may be considered by the court on a motion to dismiss." [Doc. 22 at 6 n.1 and at 12-13]. Defendants have requested that "[i]n the event that the Court determines that consideration of any of the attached documents would require conversion of Defendants' motion into one for summary judgment, . . . the Court [should] exercise its discretion to disregard that document so that this motion may be resolved under Rule 12(b)(6)." [Doc. 22 at 13 n.3].

Rule 12(d) provides that:

If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all material that is pertinent the motion.

Fed. R. Civ. P. 12(d). Thus, when deciding a 12(b)(6) motion to dismiss, the court has discretion to determine whether to accept documents beyond the pleadings[7]; but "[o]nce the court decides to accept matters outside the pleading, it must convert the motion to dismiss into one for summary judgment." See Property Management & Investments, Inc. v. Lewis, 752 F.2d 599, 604 (11th Cir. 1985).

---

[7]The term "pleadings" refers to the complaint or claim and the answer to the complaint or claim. Fed R. Civ. P. 7(a).

AO 72A
(Rev.8/82)

The Eleventh Circuit recognizes three exceptions to this conversion rule:

> First, conversion will not occur if the court properly takes judicial notice of attached exhibits. . . . Second, a document attached to the pleadings as an exhibit may be considered if it is central to the plaintiff's claim and the authenticity of the document is not challenged. . . . Third, the conversion is harmless and does not require notice if the parties, inter alia, made all arguments and submitted all the documents they would have even with sufficient notice.

Adamson v. Poorter, 2007 WL 2900576, at *2 (11th Cir. Oct. 4, 2007) (citations omitted). At issue here is the second exception - commonly referred to as the "incorporation by reference" doctrine - which allows a document to be considered only if it is both: (1) central to the plaintiff's claim and (2) undisputed. Horsley v. Feldt, 304 F.3d 1125, 1134 (11th Cir. 2002) (citations omitted). "[A] complaint need not even mention or attach a document in order for the court to consider the document at the motion to dismiss stage, if the document is central to plaintiff's claims and not disputed in terms of its authenticity." Atwater v. NFL Players Assoc., 2007 WL 1020848, at *7 (N.D. Ga. March 29, 2007) (citing Maxcess, Inc. v. Lucent Tech., Inc., 433 F.3d 1337, 1340 n.3 (11th Cir. 2005)). A document is considered "central" if it "could have or rather in fairness should have been attached to the complaint'" Adamson, 2007 WL 2900576, at *3. "'Undisputed' in this context means that the authenticity of the document is not challenged." Horsley, 304 F.3d at 1134 (refusing to consider

"excerpts" of a transcript which the plaintiff disputed as being different from the transcript referenced in his complaint).

Dr. Jimenez contends that the court cannot consider Defendants' Exhibits A through H without converting the motion to a motion for summary judgment because the exhibits are either not central or not of undisputed authenticity. Of particular concern to the court are Plaintiff's contentions that Exs. B, E and F are incomplete and, therefore, of disputed authenticity. Exhibit B, which is a copy of the January 23, 2006, letter stating the grounds for suspending Dr. Jimenez's staff privileges, does not include the documents it references as attachments supporting the alleged grounds for suspension of his staff privileges. [Doc. 23 at 2]. Exhibits E and F, the WellStar-Kennestone Hospital Staff Bylaws and the WellStar Medical Staff Fair Hearing Policy, refer to a third document, the Hospital Governing Body's Bylaws, which would govern in the event of a conflict in terms between Exhibits E and F; yet Defendants have not filed the Governing Body's Bylaws as an exhibit. [Doc. 23 at 5]. Plaintiff disputes Defendants Exhibits A-H and contends that treating Defendants' motion to dismiss as a summary judgment motion without allowing Plaintiff an opportunity to conduct discovery would be premature. [Doc. 23 at 1-7]. Because the exhibits to Defendants'

15

supplemental brief are disputed by the parties, the court finds that it would be inappropriate to consider them.[8]

In deciding not to take Defendants' disputed exhibits into consideration, the court notes that Jones v. United Parcel Service, Inc., 2008 U.S. Dist. LEXIS 7085, at *4-6 (N.D. Ga. Jan. 31, 2008), is factually inapposite and not dispositive in this case. In Jones, the court considered selected provisions of a collective bargaining agreement because federal law required the plaintiff to at least attempt to exhaust any grievance or arbitration remedies in such agreement. Defendants have not cited any law or case law requiring a plaintiff to exhaust administrative remedies before bringing a §1981 discrimination claim nor is there such a requirement. "Unlike Title VII, § 1981 has no

_____

[8]Accord Omega Patents, LLC v. Learn Corp., 2008 WL 821886, at *2 (M.D. Fla. March 20, 2008) (given the early stage of the proceedings and the relative lack of discovery, the court considered it premature to consider a motion for judgment on the pleadings or convert it to a motion for summary judgment where court could not resolve the question of intent solely by reference to the pleadings); Dawley v. NF Energy Saving Corp. Of America, 2008 WL 4534263, at *2 (M.D. Fla. Oct. 6, 2008) (finding that judgment on the pleadings was not appropriate where the pleadings incorporated many written documents, but their meaning or effect was hotly disputed, and the court could not find that there was no genuine issue of material fact regarding any of the plaintiff's contract causes of action or the exhibits incorporated in the pleadings). "The standards of review applicable to a Rule 12(b)(6) motion to dismiss [as in the case before the court now] and a Rule 12(c) motion are very similar if not virtually identical." Hallberg v. Pasco County, Florida, 1996 WL 153673, at *2 (M.D. Fla. March 18, 1996); see also Sikes v. American Telephone and Telegraph Company, 841 F. Supp. 1572, 1580 (S.D. Ga. 1993).

administrative exhaustion requirement." <u>Malone v. K-Mart Corp.</u>, 51 F. Supp. 2d 1287, 1304 n.7 (M.D. Ala. 1999) (citing <u>Caldwell v. National Brewing Co.</u>, 443 F.2d 1044, 1046 (5th Cir. 1971) (stating that a plaintiff "has an independent remedy under § 1981 without respect to exhaustion under Title VII"); <u>Jackson v. Motel 6 Multipurpose, Inc.</u>, 130 F.3d 999, 1007 (11th Cir. 1997)). This case is also distinguishable from the case of <u>Day v. Taylor</u>, 400 F.3d 1272, 1277-78 (11th Cir. 2005), cited by Defendants, where the court considered a single form contract, the contents of which were not in dispute. Here, Defendants have presented the court with contested exhibits, without filing their enclosures or referenced documents. The court finds that Exhibits B, E and F are comparable to the exhibits in <u>Horsley</u>, which contained disputed "excerpts" of statements from a CNN transcript. The court will not consider Defendants' exhibits without giving the Plaintiff an opportunity to engage in discovery.

### B. Plaintiff's Claims Under 42 U.S.C. § 1981

#### 1. Defendants' Alleged Breach of Plaintiff's Contracts

The elements of a discrimination cause of action under § 1981 are "(1) that the plaintiff is a member of a racial minority, (2) that the defendant intended to discriminate on the basis of race, and (3) that the discrimination concerned one or more of the

17

activities enumerated in the statute." <u>Rutstein v. Avis Rent-A-Car Systems, Inc.</u>, 211

F.3d 1228, 1235 (11th Cir. 2000). The statute provides in relevant part that

> (a) All persons . . . shall have the same right in every State . . . to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws . . . as is enjoyed by white citizens. . . .

> (b) For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts and the enjoyment of all benefits, terms, and conditions of the contractual relationship.

42 U.S.C. § 1981. Defendants contend that the allegations in Plaintiff's complaint have

not and cannot satisfy the third required element for a § 1981 claim because regardless

of Plaintiff's factual allegations, Georgia courts have held that staff privileges at a

hospital do not *per se* constitute a contract and § 1981 prohibits racial discrimination

only in the making and enforcing of contracts. [Doc. 22 at 15-16]. After careful

review, the court finds that Georgia law on this issue is not as clear-cut as Defendants

would lead the court to believe and that Defendants have failed to show that Count I

should be dismissed as a matter of law.

There has been and continues to be a split of authority across the country on the

issue of whether hospital staff bylaws create a binding and enforceable contract between

a hospital and physician. The majority view is that bylaws, when approved and adopted

18

by the hospital's governing board, are a binding and enforceable contract. Janda v. Madera Community Hosp., 16 F. Supp. 2d 1181, 1184-85 (E.D. Cal. 1998) (citing Virmani v. Presbyterian Health Services, Corp., 127 N.C. App. 71, 488 S.E.2d 284, 287-88 (1997) (rejecting hospital argument that there was no mutual exchange of consideration to support a contract because hospital was statutorily required to enact bylaws)) (citations omitted for cases from Iowa, Utah, Texas, Tennessee, Florida, Maryland, North Carolina, Pennsylvania, and South Dakota). A minority of states, including Georgia, appear to hold the opposite view. Janda, 16 F. Supp. 2d at 1185 (citing Robles v. Humana Hosp. Cartersville, 785 F. Supp. 989, 1001-02 (N.D. Ga. 1992)). In Robles, the court reached a conclusion opposite to that in Virmani and held that hospital bylaws do not create a contract *per se* between the hospital and its medical staff because there is no mutual exchange of consideration since the hospital had a legal duty to develop the bylaws. However, Robles also held that medical staff bylaws are judicially enforceable. Robles, 785 F. Supp. at 1000-02 (citing St. Mary's Hosp. of Athens, Inc. v. Radiology Professional Corp., 205 Ga. App. 121,126-27, 421 S.E.2d 731, 736-37 (1992)). See also Satilla Health Services, Inc. v. Bell, 280 Ga. App. 123, 633 S.E.2d 575 (2006) (discussing St. Mary's as well as Cobb County Kennestone Hosp. Auth. v. Prince, 242 Ga. 139, 144, 249 S.E.2d 581, 585 (1978), and explaining

19

the context of those decisions; holding that medical staff bylaws did not authorize hospital to automatically terminate radiologist's access by signing exclusive contract with other cardiologist group).

The Georgia Supreme Court has held that medical staff bylaws and restrictions must be reasonable and non-discriminatory. Dunbar v. Hospital Authority of Gwinnett County, 227 Ga. 534, 540, 182 S.E.2d 89, 93 (1971) (rules, regulations or acts of the hospital's governing authorities regulating privilege to practice medicine in hospitals in Georgia cannot be unreasonable, arbitrary, capricious or discriminatory) (citing 40 Am Jur. 2d 857, § 10). See also Prince, 242 Ga. at 144, 249 S.E.2d at 585 (hospitals may prescribe qualifications for admission to practice "in the absence of any statutory restrictions"). Even if medical staff bylaws do not *per se* create a contract, it is clear from the case law that this does not prevent the court from addressing Plaintiff's allegations of federal statutory violations. See, e.g., Robles, 785 F. Supp. at 994-99 (addressing anti-trust claims).

Defendants have not cited any dispositive case law preventing the court from considering Plaintiff's § 1981 race discrimination claim in connection with the suspension of his hospital staff privileges. Other courts addressing § 1981 race discrimination claims in conjunction with a refusal to renew medical staff privileges

20

have not dismissed such claims for lack of an underlying contract.  See e.g., Vesom v.

Atchison Hospital Assoc., 279 Fed. Appx. 624, 635-37 (10th Cir. 2008) (addressing §

1981 discrimination claim; dismissing the claim for failure to demonstrate pretext);

Talwar v. Catholic Healthcare Partners, 258 Fed. Appx. 800, 803-07  (6th Cir. 2007)

(addressing § 1981 discrimination claim where state (Ohio) courts had held that staff

bylaws did not form binding contract); Samuel v. Herrick Memorial Hospital, 201 F.3d

830, 834-35 (6th Cir. 2000) (denying motion to dismiss race discrimination and antitrust

claims even though Michigan statute flatly prohibited judicial review of medical

staffing decisions).

The relationship between a physician and a hospital is a mutually beneficial

relationship that goes to the arrangement between the two parties, not simply to whether

the bylaws constitute a contract which is a wholly different question.   Robles, 785 F.

Supp. at 1002 n10.[9]  As described by Plaintiff,

_____

[9]See also Janda, where the court stated:

[T]he general rule [is] that the promise to perform an act which the
promisor is already bound to perform cannot constitute consideration to
support an enforceable contract. Thus the mere enactment of a set of
bylaws pursuant to the statute is a preexisting duty and cannot itself
constitute consideration for the formation of a contract. When, however,
a hospital offers to extend a particular physician the privilege to practice
medicine in that hospital it goes beyond its statutory obligation.  If the
offer is accepted by the physician, the physician receives the benefit of

21

[O]ne must only consider the typical complex relationship between hospital and hospital - privileged physician. The doctor works as part of a team with other health care providers who are in the employ of the hospital, and other physicians having privileges at the same facility. The hospital usually bills the patient or third-party providers for in-patient care, and the hospital's charges to the patient for its facilities accrue based upon the doctor's admission of the patient. What informs this complex relationship if not an exchange of promises to engage in mutually advantageous conduct, the promise of each as consideration for the promise of the other.

[Doc. 23 at 14]. As the court in <u>Robles</u> recognized:

A physician/hospital relationship is very difficult to define. In Georgia, doctors are normally considered independent contractors, not employees of hospitals or agents of hospitals. <u>See</u> <u>Richmond County Hosp. Auth. v. Brown</u>, 257 Ga. 507, 361 S.E.2d 164 (1987); <u>Georgia Osteopathic Hosp., Inc. v. Hollingsworth</u>, 242 Ga. 522, 250 S.E.2d 433 (1978); <u>Whitaker v. Zirkle</u>, 188 Ga. App. 706, 374 S.E.2d 106 (1988); <u>West End Investments of Atlanta, Inc. v. Hills</u>, 188 Ga. App. 274, 372 S.E.2d 665 (1988). Consequently, the patient referral agreement is the basis for the

---

being able to treat his patients in the hospital and the hospital receives the benefit of providing care to the physician's patients. If the privilege is offered and accepted, each confers a benefit on the other and these benefits constitute sufficient and legal consideration for the performance of the agreement. <u>See</u> 17A Am. Jur. 2d, Contracts § 113, at 129 (1991) (consideration defined to include any "benefit accruing to one party"). If the offer includes a condition that the physician be bound by certain bylaws promulgated by the hospital and the physician accepts the offer, those bylaws become a part of the contract, as there is mutual assent to be bound by the bylaws.

<u>Janda</u>, 16 F. Supp. 2d at 1185. <u>And see</u> <u>Farrior v. H. J. Russell & Co.</u>, 45 F. Supp. 2d 1358, 1365-66 (N.D. Ga. 1999) (under Georgia law, an at-will employee can assert claims of racial discrimination under § 1981).

22

> understanding that the hospital will grant the doctor privileges at the hospital, while the doctor agrees to send his patients to the hospital for treatment. This mutually beneficial relationship [ ] goes to the arrangement between the two parties, not to whether the bylaws, per se, are a contract as Plaintiff claims. . . .

Robles, 785 F. Supp. at 1002 n.10. Based on the foregoing authority, the court finds that Defendants have failed to show that Georgia law requires the court to dismiss Plaintiff's § 1981 discrimination claim as a matter of law. The court therefore recommends that Defendants' motion to dismiss Plaintiff's first cause of action based on § 1981 discrimination be DENIED.[10]

### 2. Defendants' Alleged Retaliation in Violation of § 1981

"As a preliminary matter, it is undisputed that a plaintiff may bring a § 1981 retaliation claim." Glymph v. District of Columbia, 211 F. Supp. 2d 152, 153 (D. D.C. 2002) (citing Andrews v. Lakeshore Rehabilitation Hosp., 140 F.3d 1405 (11th Cir. 1998); Barge v. Anheuser-Busch, 87 F.3d 256, 259 (8th Cir.1996); Hawkins v. 1115 Legal Service Care, 163 F.3d 684, 693 (2nd Cir. 1998)).[11] "[T]he 1991 [Civil Rights]

---

[10]See Davita, Inc., v. Nephrology Associates, P.C., 253 F. Supp. 2d 1370, 1380-82 (S.D. Ga. 2003) (denying defendants' motion to dismiss breach of contract claims).

[11]Von Zuckerstein v. Argonne Nat. Laboratory, 984 F. 2d 1467, 1472 (7th Cir. 1993), also cited in Glymph, was decided on the basis of the law under the Supreme Court's decision in Patterson v. McLean Credit Union, 491 U.S. 164, 109 S. Ct. 2363, 105 L. Ed. 2d 132 (1989), and, therefore, the plaintiff's § 1981 claim was not actionable because the actions complained of pre-dated the amendment to § 1981 of

AO 72A
(Rev.8/82)

Act's legislative history is 'replete with expressions of Congress's intent to broaden section 1981 specifically to cover race-based retaliation in all phases of contractual relations.'" <u>Glymph</u>, 211 F. Supp. 2d at 153 (citation omitted).

In his second cause of action, Dr. Jimenez alleges that "Defendants' actions in continuing Plaintiff's suspension while delaying inordinately the scheduling and completion of a hearing constituted retaliation for Plaintiff's opposition to racial discrimination in violation of 42 U.S.C. § 1981." [Doc. 19, ¶ 83]. Defendants contend that Plaintiff has failed to allege a *prima facie* case of retaliation under § 1981 because (1) the complaint does not allege that Plaintiff engaged in conduct protected under § 1981, i.e., complaints of racial discrimination in the making and enforcement of contracts in violation of § 1981; (2) the protected activity, if any, was too remote in time to be causally related to the adverse actions of which he complains; and (3) the action of which he complains was not an adverse employment action. [Doc. 22 at 23, 24, 26].

The familiar "McDonnell Douglas burden-shifting scheme of proof" applied in Title VII retaliation cases is also applied in § 1981 retaliation claims. <u>See</u> <u>Holifield v. Reno</u>, 115 F.3d 1555, 1566 (11th Cir. 1997); <u>Carr v. Stillwaters Development Co., L.P.</u>,

_____

the Civil Rights Act of 1991. <u>See</u> <u>Farmer v. Lowe's Companies, Inc.</u>, 188 F. Supp. 2d 612, 618 n.4 (W.D. N.C. 2001).

24

83 F. Supp. 2d 1269, 1277 (M.D. Ala. 1999). The burden of production is initially on the plaintiff, who must establish a *prima facie* case of retaliation by a preponderance of the evidence. To establish a *prima facie* case of retaliation, a plaintiff must show that: (1) he engaged in statutorily protected expression; (2) he suffered an adverse employment action; and (3) the adverse action was causally related to the protected expression. Weeks v. Harden Mfg. Corp., 291 F.3d 1307, 1311 (11th Cir. 2002). The plaintiff "'need not prove the underlying claim of discrimination which led to his protest,' however, the plaintiff must have had a reasonable good faith belief that the discrimination existed." Holifield, 115 F.3d at 1566 (citing Tipton v. Canadian Imperial Bank of Commerce, 872 F. 2d 1491, 1494 (11th Cir. 1989)). "It is important to note that this circuit interprets the causation requirement broadly: 'a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated.'" Robinson v. AFA Service Corp., 870 F. Supp. 1077, 1083 (N.D. Ga. 1994) (citing EEOC v. Reichold Chems., Inc., 988 F. 2d 1564, 1571 (11th Cir. 1993)). See also Olmsted v. Taco Bell Corp., 141 F.3d 1457, 1460 (11th Cir. 1998).

Defendants argue that Plaintiff cannot state a claim setting forth a reasonable good faith belief in the underlying claim of discrimination which led to his protest because "the only arguable allegation of protected conduct in [Plaintiff's] Amended

25

Complaint, the filing of the EEOC complaint against Defendant WellStar in June, 2006, did not involve the assertion of rights protected under § 1981 [again because] Plaintiff's medical staff privileges did not create a contract . . . thus Plaintiff's complaint about the summary suspension of those privileges did not implicate rights protected under § 1981." [Doc. 22 at 25]. The cases cited by Defendants do not support their argument. In Hawkins, 163 F.3d at 693, unlike here, the alleged discriminatory behavior in response to the claimant's assertion of rights protected under § 1981 was not actionable because it took place before the enactment of the Civil Rights Act of 1991. In Phillips v. Mabe, 367 F. Supp. 2d 861 (M.D. N.C. 2005), also cited by Defendants, the court expressly rejected an argument that the complaint should be dismissed because the plaintiff did not have a contract protected under § 1981. Noting that both at-will employment and an independent contractor relationship can serve as a contract for § 1981 purposes and that tortious interference by the third party defendants with a contract is also actionable under § 1981, the court dismissed the plaintiff's § 1981 claim for other reasons: the plaintiff was complaining that the defendants had interfered not with contractual rights but with his efforts to vindicate equal protection, i.e., constitutional rights. Id. at 869-70 (citations omitted).

Furthermore, for the reasons stated previously, the court finds Defendants' first argument equally without merit in the context of Plaintiff's retaliation claim. As stated earlier, Plaintiff has alleged a plausible contractual relationship with the hospital Defendants, separate from any issue of enforcement of the bylaws. Plaintiff's allegations of the individual Defendant physicians' tortious interference with his contract with the hospital Defendants are also enough to raise a § 1981 claim. Phillips, 367 F. Supp. 2d at 869-70. Plaintiff has stated a plausible claim that he engaged in statutorily protected expression, thus satisfying the first element for alleging a *prima facie* case of retaliation in violation of § 1981.

Plaintiff has also stated a cause of action for the second element of a *prima facie* case of retaliation under § 1981 because he has alleged that there was a causal connection between his complaints of discrimination and the adverse action of which he complains. Plaintiff states that when Defendants delayed the hearing which he had requested in January 2006, he filed an EEOC claim in June 2006, alleging that the suspension of his privileges was based upon his race, national origin[12] ("non-white")

---

[12]With regard to Plaintiff's claims, the one notable difference between Title VII and § 1981 is that while Title VII explicitly forbids discrimination based upon both race and national origin, § 1981 only forbids discrimination based upon race. See Bullard v. OMI Georgia, Inc., 640 F. 2d 632, 634 (5th Cir. Unit B 1981) ("[T]his circuit has also stated that section 1981 does not encompass discrimination based solely on national origin, Olivares v. Martin, 555 F. 2d 1192, 1196 (5th Cir. 1977)."). In some

AO 72A
(Rev.8/82)

and [in retaliation for] his opposition to discrimination." [Doc. 19, ¶ 77]. <u>Cyrus v. Hyundai Motor Mfg. Alabama, LLC</u>, 2008 U.S. Dist. LEXIS 33826, at *28-32 (M.D. Ala. Apr. 24, 2008), cited by Defendants, is not dispositive in this case. In <u>Cyrus</u>, the plaintiff's alleged protected statements were *informal* expressions, not an EEOC complaint. The court found that the plaintiff's informal expressions failed to meet the level of specificity required to bring them within the protections of Title VII's opposition clause because the plaintiff did not present any evidence that he had conveyed to defendants a belief that he had been discriminated against in violation of Title VII. Here, however, the causally related protected activity which forms the basis of Dr. Jimenez's retaliation claim was a formal complaint to the EEOC. Defendants argue *inter alia* that Plaintiff has not alleged that all or any of the Defendants were aware that Plaintiff filed an EEOC complaint. The court finds that Defendants' argument has no merit as the EEOC would have notified the Defendant named in the EEOC complaint and contacted others in the course of investigating the EEOC

─────────────

cases, "the line between discrimination on account of race and discrimination on account of national origin may be so thin as to be indiscernible." <u>Bullard</u>, 640 F. 2d at 634 (quoting <u>Enriquez v. Honeywell, Inc.</u>, 431 F. Supp. 901, 904 (W.D. Okla. 1977)). In the present case, however, there is nothing in the pleadings to indicate that the court is faced with this type of problem. Therefore, Plaintiff's § 1981 claim will only be considered insofar as it is a race, and not national origin, discrimination claim.

complaint and, thus, at least some Defendants would have been aware that the Plaintiff was complaining about race discrimination in violation of federal law.

Defendants also argue that Plaintiff's allegations "involve complaints that are so far removed in time, content, and context from the alleged "retaliation" that there is no plausible basis to assert a causal connection between the two." Although Plaintiff's complaint sets forth events that happened between 2003 and 2006, prior to his EEOC complaint in June 2006, the retaliation of which Plaintiff complains is his suspension which Defendants continued after Plaintiff requested a hearing, even though a medical review company determined that Plaintiff's patient care was adequate and in accord with neurological standards. Plaintiff's suspension continued after his EEOC complaint so that almost one year passed after his request for a hearing without his ever receiving a hearing. As stated earlier, "[i]t is important to note that this circuit interprets the causation requirement broadly: 'a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated.'" Robinson, 870 F. Supp. at 1083 (citation omitted). The court finds that Plaintiff's complaint states facts satisfying the causation requirement for a *prima facie* case of retaliation under § 1981.

AO 72A
(Rev.8/82)

Defendants contend that Plaintiff has still failed to set forth a *prima facie* case of retaliation because he has not alleged that he suffered an adverse action. [Doc. 23 at 26-28]. The court disagrees. Adverse employment actions can include "continued suspension which raises an issue of material fact as to whether [Plaintiff] was terminated." Adams v. Home Depot USA, Inc., 2007 WL 4565163, at *26 (D. Or. Dec. 19, 2007). See also EEOC v. Crown Zellerbach Corp., 720 F. 2d 1008, 1012 (9th Cir. 1983) (four-month disciplinary suspension which continued in effect following arbitrator's favorable decision constituted adverse employment action); Kennedy v. General Motors Corp., 226 F. Supp. 2d 1257 (D. Kan. 2002) (citing Roberts v. Roadway Express, Inc., 149 F.3d 1098, 1104 (10th Cir. 1998) ("Actions such as suspensions or terminations are by their nature adverse even if subsequently withdrawn.")). Having alleged an adverse action, Plaintiff has, therefore, also stated a cause of action satisfying the third requirement for a *prima facie* case of retaliation. The court, therefore, recommends that Defendant's motion to dismiss Plaintiff's claim for retaliation in violation of § 1981 be DENIED.

### C. Defendants' Alleged Conspiracy in Violation of § 1985(3).

Section 1985(3) provides in pertinent part:

If two or more persons in any State or Territory conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of

30

persons of the equal protection of the laws, or of equal privileges and immunities under the laws . . . [and] if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3). Section 1985(3) does not create substantive rights; "[i]t is a purely remedial statute, providing a civil cause of action when some otherwise defined federal right - to equal protection of the laws or equal privileges and immunities under the laws - is breached by a conspiracy in the manner defined by the section." <u>Great American Federal Savings & Loan Assoc. v. Novotny</u>, 442 U.S. 366, 376, 99 S. Ct. 2345, 2351, 60 L. Ed. 2d 957 (1979).

Plaintiff contends that he has alleged facts sufficient to support an inference that a conspiracy existed, spearheaded by Dr. Moore, in an effort to bring about the suspension of Plaintiff's clinical privileges and deprive him of his rights based on racial animus. In order to establish a § 1985(3) conspiracy claim, Plaintiff must allege and prove the following:

"(1) a conspiracy; (2) for the purpose of depriving . . . any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States."

31

Johnson v. City of Fort Lauderdale, Florida, 126 F.3d 1372, 1379 (11th Cir. 1997)

(quoting United Brotherhood of Carpenters & Joiners of America, Local 610 v. Scott,

463 U.S. 825, 828-29, 103 S. Ct. 3352, 3356, 77 L. Ed. 2d 1049 (1983)).  When a

private conspiracy is alleged, as is true in this case involving private hospitals, plaintiffs

"must show, *inter alia*, (1) that 'some racial, or perhaps otherwise class-based,

invidiously discriminatory animus [lay] behind the conspirators' action,' . . . and (2) that

the conspiracy 'aimed at interfering with rights' that are 'protected against private, as

well as official, encroachment[.]'"  Bray v. Alexandria Women's Health Clinic, 506

U.S. 263, 267-68, 113 S. Ct. 753, 758, 122 L. Ed. 2d 34 (1993) (quoting Griffin v.

Breckenridge, 403 U.S. 88, 102, 91 S. Ct. 1790, 1798, 29 L. Ed. 2d 338 (1971)); see

also Park v. City of Atlanta, 120 F.3d 1157, 1161 (11th Cir. 1997).  Defendants contend

that Plaintiff has not alleged a conspiracy to deprive him of any of the rights or

privileges protected by § 1985(3).

The Supreme Court has noted that there are only few rights protected against

solely private encroachment: "only the Thirteenth Amendment right to be free from

involuntary servitude . . . and, in the same Thirteenth Amendment context, the right of

interstate travel. . . ."  Bray, 506 U.S. at 278, 113 S. Ct. at 764 (citations omitted).  And

see Benton v. Cousins Properties, Inc., 230 F. Supp. 2d 1351, 1383-84 (N.D. Ga. 2002)

32

(noting that, "although the Supreme Court has not held squarely that Section 1985 claims can not be based on an allegation of a conspiracy by private actors to deprive a person of her right to enter a private contract, the Court has held that Section 1985 claims cannot be based on a conspiracy by private actors to discriminate against a person in the employment context, in violation of Title VII. . . .") (citing Novotny, 442 U.S. at 378, 99 S. Ct. at 2352 (conclud[ing] that § 1985(3) may not be invoked to redress violations of Title VII). This court has previously dismissed a conspiracy claim based on alleged discrimination under § 1981. See Ayers v. Intown Suites Mgmt., Inc., 2006 WL 783352, at *4 (N.D. Ga. March 21, 2006).[13] Accordingly, as Plaintiff's § 1981 discrimination claim is not an actionable basis for a §1985(3) conspiracy claim and Plaintiff has not alleged any facts or referenced any other basis for a § 1985(3) conspiracy claim based on involuntary servitude or limitation of his right to interstate travel, the court recommends that Defendants' motion to dismiss Plaintiff's third cause of action for conspiracy in violation of §1985(3) be GRANTED.

### D. Defendants' Alleged State Law Violations

---

[13]Compare Bolt v. Halifax Hosp. Medical Center, 891 F. 2d 810 (11th Cir. 1990) ("Bolt III") (cited by Plaintiff) (holding *inter alia* that hospitals and their medical staff are theoretically legally capable of conspiring with one another) as limited by Bolt v. Halifax Hosp. Medical Center, 980 F. 2d 1381 (11th Cir. 1993) (holding that conspiracy theory under 1985(3) cannot be used to circumvent state action immunity in a conspiracy claim under the Sherman Act).

AO 72A
(Rev.8/82)

### 1. Ga. Stat. 51-10-1

In his fourth cause of action, Plaintiff contends that Defendants intentionally and maliciously interfered with his enjoyment of his property interest in the practice of his profession in violation of Ga. Stat. 51-10-1. [Doc. 19, ¶¶ 119, 120]. Defendants contend that Plaintiff's fourth cause of action should be dismissed because under Georgia law, medical staff privileges arising under medical staff bylaws do not create a "property interest." [Doc. 22 at 31]. In support of their argument, Defendants cite Stein v. Tri-City Hosp. Author., 192 Ga. App. 289, 292, 384 S.E.2d 430, 433 (1989). The decision in Stein was based on a line of reasoning discussed earlier, holding that bylaws *per se* do not create a contract. As the court stated earlier in this report and recommendation, the relationship between a physician and a hospital is a mutually beneficial relationship that goes to the arrangement between the two parties, not simply to whether the bylaws constitute a contract. Georgia courts have specifically recognized that medical staff privileges embody a valuable property interest. See Richards v. Emanuel County Hosp. Auth., 603 F. Supp. 81, 85 (S.D. Ga. 1984) (staff privileges are a valuable property interest, even though the loss of staff privileges does not prevent the doctor from practicing his profession as does the revocation of his license) (citation omitted). The court concludes, therefore, that Dr. Jimenez's complaint has stated a

34

cause of action for interference with his property interest in his hospital staff privileges in violation of Ga. Stat. 51-10-1.

## 2. Ga. Stat. 51-1-8

In his fifth cause of action, Plaintiff contends that Defendant WellStar-Kennestone breached its express and implied contractual obligations of good faith and fair dealing when it suspended Plaintiff's staff privileges without a hearing within a reasonable period of time, in violation of Ga. Stat. 51-1-8. [Doc. 19, ¶¶ 121, 122]. Defendants argue that Plaintiff's breach of contract claim again rests entirely on his allegation that his medical staff privileges somehow created an express or implied contract with WellStar-Kennestone. For the reasons previously stated herein, the court finds that Plaintiff's contractual arrangement with WellStar-Kennestone (and with the other defendant hospitals) goes beyond the bylaws governing hospital staff privileges and gives rise to an obligation of good faith and fair dealing. Defendants' alleged breach of those obligations is separate and apart from the issue of whether Defendant WellStar-Kennestone properly enforced its bylaws. The court, therefore, finds that Defendants' argument to dismiss Plaintiff's fifth cause of action is without merit.

AO 72A
(Rev.8/82)

### 3. Ga. Stats. 51-1-6 and 7

In his sixth cause of action, Plaintiff alleges that Defendant WellStar-Kennestone failed to act in accord with its bylaws "[when it failed] to refrain from engaging in racially discriminatory and otherwise vindictive conduct toward Plaintiff" in violation of its statutory obligations, thus causing special damage for which Plaintiff has a cause of action under Ga. Stats. 51-1-6 and 7.[14]  [Doc. 19, ¶¶ 123, 124].  Defendants' sole argument regarding Plaintiff's sixth cause of action (which they also argue in support of their motion to dismiss Plaintiff's fourth and fifth causes of action) is that the claim(s) should be dismissed because Dr. Jimenez failed to exhaust the administrative remedies available to him through the Kennestone Medical Staff Bylaws when he withdrew his request for a hearing and, thus, forfeited his rights under Georgia law to his hospital privileges.  Plaintiff argues that Defendants' delay in holding a hearing and the continued suspension of his staff privileges made it impossible for him to take the November 2006 board certification oral exams which would have made him eligible for reinstatement of his privileges.  Even assuming that he was no longer being deprived

---

[14]See Lee v. Hosp. Auth., 397 F.3d 1327, 1329 (11th Cir. 2005) (holding that when hospital fails to comply with its bylaws and arbitrarily revokes a physician's staff privileges, injured physician can maintain a cause of action under Georgia statute for hospital's breach of its legal duties under Ga. Stat. 51-1-6); Katz v. Hosp. Auth. of Rabun County, 254 Ga. App. 209, 561 S.E.2d 858 (2002).

36

of his privileges after he withdrew from the hearing process, Plaintiff argues that the entire period up to that time remains as a period during which Defendants were interfering with his property interest in his profession. Plaintiff also argues that by prolonging the hearing process to the point of making it "a sham designed to do nothing but drag on indefinitely[,]" Defendants made it "futile" for Plaintiff to go forward with the hearing. [Doc. 23 at 27]. The doctrine of futility of an administrative hearing appears to be an issue of first impression in the context of the claims raised by Plaintiff. Neither party has addressed that issue. The only case cited by Defendants in support of their motion to dismiss Plaintiff's state claims for failure to exhaust administrative remedies is the two page appellate court opinion in <u>Sanchez v. Hosp. Auth. of Walker, Dade & Catoosa Counties</u>, 146 Ga. App. 734, 247 S.E.2d 534 (1978). That case, however, involved the physician's failure to ask for an appeal after being notified that the hospital executive committee's recommendation was to terminate his privileges. Whereas, here, Plaintiff requested a hearing and alleges that he was effectively denied his right to a hearing for over one year and that pursuing the hearing further was allegedly futile, an exception to the exhaustion doctrine. In addition, <u>Sanchez</u> applied the exhaustion of remedies doctrine in the context of a public hospital. Defendants have not shown that the doctrine is applicable where a plaintiff is challenging action taken

AO 72A
(Rev.8/82)

by a private hospital.[15] Based on the foregoing, the court recommends that Defendants' motion to dismiss Plaintiff's sixth cause of action, and his motion to dismiss Plaintiff's fourth, fifth and sixth causes of action for failure to exhaust administrative remedies, be DENIED.

## IV.   Conclusion

For the above and foregoing reasons, the court recommends that Defendants' motion [Doc. 11] to dismiss be **GRANTED IN PART**, dismissing Plaintiff's third cause of action for conspiracy in violation of § 1985(3), and **DENIED IN PART** as to all remaining causes of action.

If the court's report and recommendation is adopted by the District Judge, then Defendants are **ORDERED** to file an answer within twenty (20) days of entry of the District Judge's decision.

---

[15]See City of Atlanta v. Hotels.com, 288 Ga. App. 391, 393, 654 S.E. 2d 166, 169 (2007) (exhaustion doctrine, under which a party aggrieved by a state agency's decision must raise all issues before that agency and exhaust available administrative remedies before seeking any judicial review of the agency's decision, is usually applied to bar lawsuits brought by an aggrieved private citizen against the government).

AO 72A
(Rev.8/82)

**IT IS SO RECOMMENDED AND ORDERED**, this 25th day of November, 2008.

JANET F. KING
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/82)